LANDAS FERTILIZER COMPANY, d/b/a a Division of Hawkeye Fertilizer Corp., of Emmetsburg, Iowa, and Cornland Fertilizers, Inc., of Sun Prairie, Wisconsin, Appellant,

v.

Gilbert HARGREAVES and Meryl Keding, Appellees.

LANDAS FERTILIZER COMPANY, d/b/a a Division of Hawkeye Fertilizer Corp., of Emmetsburg, Iowa, and Cornland ,Fertilizers, Inc., of Sun Prairie, Wisconsin, Appellant,   ·

v.

Richard EGAN and Meryl Keding, Appellees.

No. 55597.

Supreme Court of Iowa.

April 25, 1973.

Darold J. Jack, Oelwein, for appellant.

John W. D. Hofmeyer, Fayette, for appellees.

Heard before MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

These consolidated appeals involve the right of a vendor of chemical fertilizer and other products to a mechanic's lien on farmland rented by the purchaser of such products.

Plaintiff Landas Fertilizer Company sold fertilizer, herbicide and seed and provided some related labor to defendant Meryl Keding, tenant on Fayette County farms individually owned by defendants Gilbert Hargreaves and Richard Egan. Keding rented the farms by written annual cash-rent leases. When Keding failed to pay his account Landas filed a mechanic's lien for $5,104.81 against the Hargreaves land arising out of purchases during the 1967 and 1968 crop years and a mechanic's lien for $2,558.86 against the Egan land for purchases during the 1968 crop year. Subsequently Landas filed separate actions against each landlord, joining Keding as a defendant in each case, asking judgment for its claims and foreclosure of the liens. The actions were consolidated. Default judgment was taken against Keding who was insolvent.

By agreement the parties tried only the issue of the validity of the liens against the Hargreaves and Egan land. Landas sought to prove Keding acted as the landlords' agent in making the purchases. Trial court found the proof inadequate and dismissed the petitions as to Hargreaves and Egan. Landas appealed. We affirm the trial court.

Although Landas states five propositions, all raise a single question: Did Landas prove Keding was the landlords' agent in making the purchases?

Since these are equity cases our review is *de novo*. We are not bound by trial court findings of fact but we give them weight. Rule 344(f)(7), Rules of Civil Procedure.

"Agency" is defined in Restatement of Agency, Second, § 1, as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Landas acknowledges it had no contact or dealings with Hargreaves or Egan. It seeks to establish Keding's agency based on actual rather than apparent authority. Compare Restatement of Agency, Second, § 7, "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him," with Restatement of Agency, Second, § 8, "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Landas alleges Keding had actual power to bind the landlords.

Two principles have developed relating to proof of such agency in cases where a mechanic's lien is asserted against a landlord by reason of improvements to the land

by a tenant. They are stated in Cassaday v. DeJarnette, 251 Iowa 391, 393–394, 101 N.W.2d 21, 23 (1960):

"It is well settled in this jurisdiction that mere knowledge of or consent to the making of improvements by a lessee does not usually subject the interest of the lessor to a mechanic's lien. [citations]

"It is well established where a lessor has, by agreement expressed or implied with his lessee, contracted for an improvement of his real estate by the lessee, and it further appears that such improvement itself is a part of the value for which compensation is paid, and that the improvement is to become the sole property of lessor within a relatively short period of time, that the interest of the lessor in the realty is subject to the claim of a mechanic's lien for the reasonable value of the material or labor furnished in making that improvement. [citations] "

Landas argues the present cases come under the second principle.

Strong reliance is placed on Code § 572.-1(4), which expressly makes fertilizer a lienable material, and on the terms of the leases. The leases are adaptations of Iowa State Bar Association Official Form 14 (Rev. Nov. 10, 1956), with the landlords exchanging use of their land for fixed cash payments and assurances the land would be restored to them in good condition at the end of the crop year. The Hargreaves lease for the 1968 crop year includes these provisions:

"3. PROPER HUSBANDRY. Tenant covenants to farm said premises in a good and husband-like manner; and, consistent therewith, and with the terms of this lease, to get the best crop production the nature of the soil and the season will permit.

\*　　\*　　\*　　\*　　\*　　\*

"9. FERTILIZER, LIME AND CHEMICALS. Commercial fertilizer, as

required by good husbandry, shall be furnished *none%* by the Landlord and *all%* by the Tenant. Such fertilizer applied with oats seeding shall be deemed to be used that year and the next following year. If Tenant does not stay on the farm the next year he shall be reimbursed one-half of his cost of the fertilizer material used on the oats field. Chemicals, as required by good husbandry for weed or borer control and crop pests, shall be furnished *none%* by the Landlord and *all%* by the Tenant. Tenant agrees to furnish, without cost, all labor and equipment with the application of fertilizer, lime and chemicals.

\*　　\*　　\*　　\*　　\*　　\*

"12. WEED CONTROL. All noxious weeds shall be sprayed or otherwise timely destroyed by Tenant. Weeds in fence rows shall by him be timely cut with a mower or scythe or sprayed with 2–4–D.

\*　　\*　　\*　　\*　　\*　　\*

"23. EXPENSES INCURRED WITHOUT CONSENT OF LANDLORD. No expense shall be incurred for or on account of Landlord without first obtaining his written order. No mechanic's liens shall attach to said premises by virtue of any act of Tenant."

Similar provisions are in the 1967 Hargreaves lease and in the 1968 Egan lease. Landas offered evidence that a substantial majority of Fayette County farmers use commercial fertilizers and herbicides, that improved crop yields often result, and that there may be some residual benefit the next year because a crop does not exhaust all the added nutrients.

From the statute, terms of the lease and evidence Landas contends the landlords must be deemed to have required Keding to use commercial fertilizer, herbicide and related labor to obtain good crops and improve the soil for their benefit and thereby

made him their agent in purchasing such items. We do not agree.

The statute does nothing more than identify fertilizer as a lienable material. It does not make a tenant who purchases it an agent of his landlord nor does it make the fertilizer an improvement to the landlord's reversion. The lease requirements concerning good husbandry, weed control and commercial fertilizer define and mandate proper use of the land. They do not obligate the tenant to achieve high yields or to improve it. These provisions are put in leases because "[t]he lessee must know what he can do with the property, and the lessor must know that his farm * * * will not be abused or its resources wasted." Cartwright, Farm and Ranch Real Estate Law, § 45 at 98 (1972). A landlord under a cash-rent lease does not ordinarily participate in the management of the farming operation. He includes appropriate language in the lease to define the tenant's obligation to care for the land so the soil will not be depleted or overgrown with weeds at the expiration of the term. "Crop removal is generally responsible for the gradual depletion of many of the elements in soils." Berger, Introductory Soils, at 331 (1965). The tenant's intention is also obvious. He needs to know what use he can make of the land. The only benefit he intends to confer on the landlord is the cash rent. He uses fertilizer and herbicide in an effort to get maximum yield for his own benefit. Although he must leave the soil no worse then he receives it, he would like to have the sole good from what he adds to it. The evidence is overwhelming that the landlords and tenant had the usual purposes in mind when they entered the leases involved in these cases.

No one can seriously argue the use of seed improved the land. Similarly Keding's purchase of commercial fertilizer and herbicide was to enable him to produce the most profitable crop he could without harm to the land. Any residual benefit to the landlords from minimal carryover of soil nutrients due to the use of commercial fertilizer would be insubstantial, incidental and neither an express nor implied term of the parties' bargains.

There is no improvement within the meaning of the rule unless there is a substantial benefit to the realty which reverts to the landlord. Cassaday v. De-Jarnette, *supra,* 251 Iowa at 396–397, 101 N.W.2d at 25; 3 Thompson on Real Property, § 1140 at 532–533. Keding's purchases would not improve the landlords' reversion. There is nothing in the statute, leases or testimony which would enable us to conclude he made the purchases as the landlords' agent. The principle relied on by Landas is simply inapplicable.

Similarly we do not find any merit in Landas' argument the landlords have been unjustly enriched. They were to receive nothing more than the price of the use of their land, and the land was not to be harmed. Here at least Egan's rent was not even fully paid. Their bargains with Keding did not make them guarantors of Keding's bargains with Landas.

Landas has failed to prove Keding made the purchases other than on his own account. Trial court was right in dismissing the petitions as to Hargreaves and Egan. The cases are affirmed.

Affirmed.