**Ernest M. QUADE, Plaintiff-Appellee,**

v.

**Edward HEIDERSCHEIT, Defendant-Appellant.**

**No. 85–566.**

Court of Appeals of Iowa.

June 4, 1986.

Dennis J. Naughton, Dubuque, for defendant-appellant.

Michael A. Stapleton, Dubuque, for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON, and HAYDEN, JJ.

DONIELSON, Judge.

In an action for breach of a farm lease defendant, Edward Heiderscheit, appeals from judgment for plaintiff, Ernest Quade, asserting: that the evidence was insufficient to support various specific damage awards, that the evidence was sufficient to establish defendant's right to recovery on counterclaims for unjust enrichment and intentional infliction of emotional distress, and that the trial court inconsistently applied a release of claims provision of an agreement of the parties terminating the lease.

The plaintiff-landlord's farm consisted of 55 acres which were in a forest preserve and another 260 acres, of which 180 acres were tillable with the balance in pasture; the farm also had a house, machine shed, cattle shed, basement barn, two silos, and a bin. The landlord was a farmer all of his life and he owned the farm for 24 years.

The farm was rolling and hilly, and over the years the landlord had established grass waterways in the erodible areas, and farmed on the contour. Of the tillable acres two-thirds to three-fourths were seeded in alfalfa. In 1980 40 acres of the tillable land was in corn and the balance was in alfalfa. There were 34 waterways on the farm, all of which were seeded and in good repair. Contour strips had been established on some of the ground by the landlord, a practice he wanted to continue, so it was incorporated in the lease that all of the tillable ground would be laid out in strips, except for the 12-acre field across the road from the home and outbuildings, which was particularly steep. Testimony indicated that the negotiations concerning the terms of the lease between the parties included a prescription for cutting alfalfa during the month of September and a restriction on the use of atrazine except on ground going into corn in the following year with a limitation of two pounds per acre. The discussions included the areas of new seeding, the rotation system where 80 acres of corn and 35 acres of new seedings were to be planted so that 100 acres would be in alfalfa at all times, the number of cattle that could be carried on the pasture, and the steep 12-acre field which was to be put in corn only for one year. After these negotiations the lease was prepared in the fall of 1980 and signed in November and provided that the landlord was to lease his farm to defendant-tenant for the three upcoming crop years.

The nonboilerplate lease terms provided that the tenant was to pay rent of $18,000 per year, payable $4,000 on or before April 1, and the balance of $14,000 on or before November 1 of each of the years 1981, 1982, and 1983; to furnish grass seed and fertilizer; to contour strip crop; to have no more than 80 acres of corn in any one year; not to remove any corn stocks; and to chisel plow for tillage.

The relevant boilerplate provisions provided to farm in a good and farmlike manner: to keep the premises in proper repair;

and at the expiration of the term of the lease, defendant was to yield up the possession to the first, without further demand or notice, in as good order and condition as when the same was entered upon by the defendant, loss by fire, inevitable accidents and ordinary wear excepted.

Disagreements developed concerning the tenant's farming methods and, in 1981 after only one crop season, the parties entered into an agreement on August of 1981, to terminate the lease which contained a term stating that they released any claims against each other "for the remainder of the terms spelled out in the lease after March 1, 1982." The landlord commenced an action alleging breach of the lease. The tenant, *inter alia*, counterclaimed on theories of unjust enrichment and intentional infliction of emotional distress.

At trial the landlord sought to show that tenant's farming practices violated terms of the lease which, *inter alia*, required him to farm in a good and farmlike manner. The landlord sought to show that the property had been damaged. The tenant sought to establish the contrary and, further, that landlord had benefited from improvements to the property and that the tenant had not been able to benefit from such improvements due to early termination of the lease. The tenant also introduced evidence of the landlord's course of conduct in dealing with him in an attempt to show a pattern of harassment.

The court awarded the landlord various specific items of damage in an amount totalling $7,070. The court found the tenant's claims were not supported by a preponderance of the evidence and/or barred by the release of claims provision of the lease termination agreement.

### I.

■ Several general principles are applicable to the case at hand. First, the finding of facts are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1); *The Recruiter, Inc., v. Brenco Automation Center*, 354 N.W.2d 245, 246 (Iowa Ct.App.1984). To recover damages, a party must prove damages were sustained and such damages cannot be speculative but must have a reasonable basis supported by the evidence. *See Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 403 (Iowa 1982); *Poulsen v. Russell*, 300 N.W.2d 289, 295 (Iowa 1981).

■ At the outset, we note that termination agreement barred either party from suing the other for damages arising in the 1982 and 1983 crop years so that any damages awarded can only be those which arose from the 1981 crop year.

The trial court's summary of testimony was as follows:

> Under the agreement between the parties, the Defendant was to undertake a contour strip farming program, planting no more than 80 acres of corn in any one year. The net result was to be a contoured stripped farm with a general crop rotation of one year oats, two years hay, and two years corn in strip rotation. The strips were laid out by the soil conservation service and compliance with them was required for soil conservation payments. While A.S.C.S. sets up the strips, the planting determination within the strips is determined by the farmer.
>
> Defendant did follow the strips as set up. His plantings, however, resulted in 100 acres of corn as opposed to 80 acres. There were no double rows, although there were adjustments to row width on ridges, etc. This is acceptable farming practice. Use of atrazine on the planted corn, however, had the effect of delaying at least a year getting [sic] the farm into a rotation system with 80 acres of corn. Plaintiff did re-seed 15 to 20 acres in 1982 in oats and lost about half of that crop, probably due to the atrazine.

■ We find that the trial court's award of $300 in damages for the re-seeded acres planted with oats is supported by substantial evidence. The landlord sowed oats as a nurse crop but the crop died off, which cost $30/acre on 20 acres. We agree with the trial court that this was probably due to

the three pounds per acre of atrazine tenant applied which has a carry-over effect to the next year and can cause stunting of crops. The court ordered one-half of the sought-after damages. We find this award is supported by substantial evidence.

■ The tenant also contends that he did not fail to farm in a good and farmlike manner when he cut the alfalfa in September prior to the first frost. While the lease did not indicate a specific cutting time, the trial court, after hearing testimony from both sides on this issue, found that the tenant's cutting the alfalfa was sufficiently late so as to warrant a finding that the general lease clause requiring good farming practise was violated. *See Landas Fertilizer Company v. Hargreaves*, 206 N.W.2d 675, 678 (Iowa 1973). *See also* Harl, *Agricultural Law*, § 8.04(4) at 8–62.

The tenant attempts to distinguish *Landas* because he not only paid rent but provided improvements to the land. We cannot find our facts render *Landas* inapplicable. *Landas* provides that the only benefit the tenant "intends to confer on the landlord is that of cash rent." *Id.* It is also established that "there is no improvement within the meaning of the rule unless there is a substantial benefit to the realty which reverts to the landlord." *Id.* (citing *Cassaday v. DeJarnette*, 251 Iowa 391, 396–97, 101 N.W.2d 21, 25 (1960); 3 Thompson on Real Property, § 1140 at 532–33). This tenant agreed to the lease terms and to terminate the lease. The court also found the residual carry-over of soil nutrients was insubstantial and incidental to the parties' bargain as did the court in *Landas*.

Even if the tenant provided substantial benefits in the form of improvements to the land, which we do not think he did, the tenant forfeited his right to such improvements upon terminating the lease. We agree substantial evidence supported the conclusion that the timing of this cut was late and caused damages. Of the 80 acres the landlord had agreed to lease to a third party for crops the next year, the rental price decreased $30/acre on 68 acres and $100/acre on 12 acres. This resulted in

damages of $3,240 ($30 × 68 + $100 × 12). Testimony indicated that cutting the alfalfa in September went against good practice because stunting and thinning resulted in the next year due to the sugars and carbohydrates which were stored in the root system of the plant to "winter over." These items were lost to the regrowth of the leaves and stem; such regrowth occurred immediately after cutting and before the freeze in the fall and could not be replenished in the root system to compensate for that loss to the leaves which caused a consequent stunting or thinning of the crop in the subsequent year. In addition, three acres of the alfalfa were not cut by the tenant in the previous fall and the crop grew vigorously in the following year, and the third party stated to the landlord that he would have paid $100 per acre if all the land was like the three-acre tract. The testimony provides substantial evidence to support the trial court's award.

■ The tenant further claims the award of $2,000 for erosion damages to existing waterways and $300 for repairs was unreasonable. Tenant maintains that to hold him liable for such damage would, in effect, make all tenants guarantors of their landlord's land such that any notable erosion which occurs will make them liable. We do not think the trial court awarded damages due to natural soil erosion, and the tenant's argument is misplaced.

The lease indicated the landlord's concern to maintain the waterways. Testimony indicated erosion occurred on the 12-acre field with the steep slope where corn was planted, the end rows and turnaround areas were plowed up and down rather than on the contour, and such erosion was severe, including the formation of ditches and sheet erosion. The fact that the atrazine was used on the field required corn to be planted in the following year, which compounded the erosion problem by virtue of having row crops in the steep field. It has been the landlord's practice to put this field in corn for only one year when it was necessary to tear up the alfalfa side because of its depletion, and this was his

intention. The landlord claimed he discussed this with the tenant prior to signing the lease. The trial court was careful by indicating that environmental factors did come into play, but that a portion of the damage was beyond the normal process and was fairly attributable to the tenant who planted crops in the waterways.

Tenant directs us to *Laska v. Steinpreis,* 69 Wis.2d 307, 231 N.W.2d 196 (1975), where the landlord recovered damages for the decreased value of the land. The loss in this case was distinguishable because it was not entirely due to normal erosion as tenant submits. Given the landlord sought damages of *over* $15,600 and $1,760 for repairs and was only awarded $2,000 for erosion and $300 for repairs to the waterways, we cannot find error in the trial court's finding. We also find the $230 awarded for fence relocation was justified.

## II.

■ The tenant's counterclaim, based on theories of unjust enrichment and intentional infliction of emotional distress, is presented for our review. Tenant's unjust enrichment claim involved his placing contour strips in the fields with the expectation he would benefit from such efforts for three years. He seeks the benefit conferred on the landlord during this time.

Tenant cites *Watson v. Lewis,* 272 N.W.2d 459, 463–64 (Iowa 1978), for the proposition that if the value of the premises is greater in the second year than the rent provided by the agreement, the lessee is entitled to the benefit of the contract and will recover the difference between those amounts. The tenant claims to have spent twenty-five percent more time than normal in the 1981 spring layout and that the form strips he installed significantly reversed erosion more than other farming techniques. Despite these contentions and given our standard of review of assigned error, we cannot find the trial court erred by finding the benefit conferred on the landlord, if any, would not satisfy unjust enrichment principles. *See Public Finance*

*Co. v. Van Blaricome,* 324 N.W.2d 716, 718 (Iowa 1982).

■ As to tenant's tort claim, while the landlord may have been overly zealous in protecting his land, we cannot find the requisites to establish the intentional infliction of emotional distress claim were proven by the tenant. The elements are:

(1) Outrageous conduct by the [landlord];

(2) The [landlord's] intention of causing, or reckless disregard of causing, emotional distress;

(3) The [tenant's] suffering severe, or extreme, emotional distress; and

(4) Actual and proximate causation of the emotional distress by the [landlord's] outrageous conduct.

*Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252, 255 (Iowa 1972).

■ This tort provides that if a landlord harasses and annoys a tenant and disturbs his quiet enjoyment by a systematic course of opposition or interference, just compensation may be awarded. *See Kuiken v. Garrett,* 243 Iowa 785, 794–95, 51 N.W.2d 149, 155 (1952). The landlord's behavior did not rise to this level so as to justify a recovery by the tenant. We also cannot find tenant suffered severe emotional distress.

## III.

The tenant finally contends the trial court erred by holding him bound by the agreement to release all claims in that his claims were denied, but did not require the landlord to be similarly bound by the agreement because the court allowed the landlord to recover damages. The tenant misreads the trial court's award.

Neither party was awarded damages for acts arising in 1982 or 1983 due to the agreement to release all claims, and no damages were awarded for a breach of the lease due to failure to pay rent. The only damages awarded were for acts occurring in 1981 which had consequences in 1982 and thereafter. As to those 1981 acts, the trial court found tenant's acts caused damage to the landlord's property in the

amount of $7,070, while the landlord's acts did not entitle the tenant to any recovery. The trial court's ruling did not bind tenant to the release agreement while permitting the landlord to circumvent it.

For these reasons, we affirm.

AFFIRMED.