LAY, Chief Judge.
This civil case comes to us on various appeals and cross-appeals involving a money judgment entered for the plaintiffs in *1462 the district court.[1] Gary Rheuport and Harry Saddoris originally sued seven defendants, alleging one federal and four state law theories of liability, after the plaintiffs were removed from their mobile home in 1980. The jury rendered a general verdict of $41,250 in damages against the seven defendants.
After various defense motions for judgment notwithstanding the verdict, the case as it stands on appeal includes liability against only four defendants, based on four theories of liability that remained against at least one defendant each. Defendant Robert Ferguson, a sheriffs deputy who carried out a writ of eviction and removed Rheuport and Saddoris from the mobile home, faces potential liability on the plaintiffs’ claim of intentional infliction of emotional distress.[2] Easter Lake Estates, Inc. (Easter Lake), corporate owner of Southridge Estates, the mobile home park from which the plaintiffs were removed, faces liability on claims of conversion, destruction of chattels, intentional infliction of emotional distress, and deprivation of property without due process of law (under the fourteenth amendment through 42 U.S.C. § 1983). Ronald Woods, an officer of Easter Lake and an employee at the park, faces liability for conversion, intentional infliction of emotional distress, and violation of due process. Don Sandelin, co-manager of the park, faces liability for conversion and intentional infliction of emotional distress.
Woods, Sandelin, and Easter Lake appeal together, basing their appeal on their good faith reliance on governmental authority, lack of federal jurisdiction, insufficiency of evidence on the intentional infliction of emotional distress claim, and inconsistency of the verdict. The plaintiffs cross-appeal the district court’s reduction of conversion damages to the amount of their equity in the mobile home. Deputy Ferguson appeals separately, asserting the defenses of qualified immunity, lack of evidence of intentional infliction of emotional distress, respondeat superior, inconsistency of the verdict, and lack of federal subject matter jurisdiction. On cross-appeal, the plaintiffs challenge the entry of judgment notwithstanding the verdict on the due process and conversion claims, as they relate to Ferguson.
I
In August of 1980, the management of Southridge Estates, a Des Moines, Iowa, mobile home park, commenced an action to remove Rheuport and Saddoris from Lot 178. A writ of eviction was issued, and the tenants appealed and lost in state court. An eviction date was set for September 3, 1980. The writ of removal came to the Polk County sheriff’s office on September 4, 1980. Sheriff’s Captain Robert Mc-Manus asked the county attorney whether the mobile home itself should be moved as part of the eviction. Because the mobile home was legally registered to one Marlys Watson, the county attorney advised that it should not be moved.[3] Deputy Ferguson was assigned to execute the writ of removal. On September 4, he served notice on the plaintiffs, telling them to vacate Lot 178 by 10:00 a.m. on September 12, or be “physically moved out.” Rheuport and Saddoris later attempted to get the mobile home moved,[4] but their lack of money prevented relocation.
At 10 a.m. on September 12, Deputy Ferguson and another officer entered the mobile home with the writ. At some point in the next two hours, Anthony J. Touschner, a lawyer representing Rheuport and Sad-doris, pleaded with Ferguson over the tele *1463 phone to remove the mobile home and not just the items inside. But Ferguson refused, as did the county attorney, who also was called by Touschner; both cited department policy, and the eviction proceeded. Movers were hired by the trailer park to bag and box personal possessions, load them on a truck, and unload them at a nearby public area. When this work was finished, Ferguson officially turned over possession of Lot 178 to Southridge Estates, with Ronald Woods signing as landlord.
Rheuport testified that as a result of these events he was prescribed librium for his nerves and developed an alcohol problem. He testified that he felt “confused”, “upset,” “nervous,” “bewildered,” and “very small — just like I was a nobody.” According to further testimony, Saddoris vomited twice on the night of the eviction and cried at a motel where the plaintiffs stayed.
Many of the personal items removed from the mobile home were lost, damaged, or stolen in the eviction process. The mobile home, meanwhile, remained on the lot until the following April. Rheuport and Saddoris did not file a replevin action, and took no other steps to regain their former home. Eventually the home was repossessed by Watson’s lender and ultimately it was destroyed by fire.
II
After hearing evidence of these events, the jury returned a verdict of liability on at least one count each against all seven of the defendants then involved in the case.[5] In a separate verdict form, the jury awarded Rheuport and Saddoris $41,250 in “compensatory damages against the defendant or defendants specified in any or all of [the seven individual] Verdict Forms.” The district court subsequently reduced this award to $28,296.08.[6]
In its ruling on damages, the court below acknowledged the dilemma created by the general verdict:
The problem now facing this Court is that the jury’s verdict as to damage is a general one, yet there remain five [sic] separate defendants and five legal theories. The jury found plaintiffs were entitled to compensatory damages in the sum of $41,250. Defendants argue that the verdicts as to liability are hopelessly inconsistent with the general verdict for damages because the judgment entered contains some measure of damages for a claim which moving defendants were specifically found not liable. The Court vigorously disagrees.
Rheuport v. Woods, No. 82-504-E, slip op. at 17-18 (S.D.Ia. Oct. 2,1984).
The court proceeded to allocate the damages against the various defendants based on their remaining liability on the various counts. The court initially found that the jury must have awarded no damages against Watson on the abuse of process claim, as the court found that claim repetitive of the combined claims of conversion, destruction of chattels, and intentional infliction of emotional distress. Next, the court found that the jury must have awarded $14,000 of the $41,250 for conversion of the mobile home and $3125 for destruction of chattels. Because Deputy Ferguson had been relieved of liability on these claims, the court set his liability at $24,125, based on “the damages found * * * attributable solely to the intentional infliction of emotional distress claim and the due process claim.” The court concluded that due process and emotional distress damages “overlap completely” under the instructions before the jury, so even though due process liability was eliminated by the court, Fer *1464 guson stood jointly and severally liable for $24,125 on the emotional distress claim. The private defendants were jointly and severally liable on the reduced award of $28,296.08, including the claims for conversion, destruction of chattels, intentional infliction of emotional distress, and violation of the plaintiffs’ due process rights.
The defendants all attack the verdict and the court’s handling of it as “inconsistent.” They assert that since all of the defendants were found liable on at least one count, but none liable on all five counts, it is impossible to apportion the damages in accordance with the jury’s findings. Moreover, the defendants argue that because the court was forced to allocate the damages after the successful motions for judgment notwithstanding the verdict, the defendants were in effect denied their right to a trial by jury as to damages. We agree.
First and foremost we think the district court erred in attributing $3125 to the destruction of chattels claim. This would be possible only if the parties had stipulated to that amount. They did not. In fact, the amount allowed by the jury was primarily based upon the estimates of damage offered by Rheuport and Saddoris. These estimates varied and were far from certain. For example, the damage to the “precious stones” owned by Rheuport and allegedly “lost” in the eviction was stated by Rheuport to be $800, based on an advertisement of similar stones from other companies. Similarly, the value placed on Rheuport’s 100-piece china set was based on his recollection of what he had paid for it. The entire itemization of the items damaged, lost, or destroyed reads like a garage sale notice, and the amounts attributed were virtual guesses by Rheuport. The credibility and acceptance of this evidence was left to the jury; it is not the court’s prerogative to substitute its judgment of value. This is not a situation in which the trial court is setting aside a verdict that is excessive or inadequate. This is a situation in which the jury appraised the damages under the uncertain evidence presented.
The trial court also equated the violation of due process by Ferguson with the damages for intentional infliction of emotional distress. The district court apparently assumed that the denial of due process by Ferguson caused the same harm. We have no way of knowing whether or not the jury intended this result. Once again it is sheer speculation as to what damages the jury assessed as to each cause of action in finding the individual defendants liable.[7]
The fundamental problem with the judgment as it stands before us is that we are unable to determine how much the jury awarded the plaintiffs on each of the several counts. We cannot say with assurance that the jury awarded any particular amount for the due process violation, intentional infliction of emotional distress, conversion, or destruction of chattels. The jury itself did not find each defendant liable on each of these claims. Moreover, the district court eliminated liability for some defendants on post-trial motions, thus exacerbating the need for a more explicit damage verdict.
To summarize, damages in a jury trial must be found and apportioned by juries, not judges. We therefore conclude that a new trial as to damages only is necessary to properly correct the perverse verdict rendered in this case.[8] We remand this case to the district court for this purpose.
Ill
We turn now to the question of what defendants and what claims should be involved on retrial. As we pointed out earli *1465 er, the plaintiffs originally brought one federal claim and four pendent state law claims. All of these claims were charged against each of the four defendants remaining in the case at this time. In this section we will discuss the validity of those claims as to each of the defendants found liable by the jury.
A. Due Process of Law
Rheuport and Saddoris have somewhat inartfully advanced their federal civil rights count under 42 U.S.C. § 1983, alleging deprivation of their property without due process of law. As presented and tried, their complaint fits the mold of “procedural due process.” [9] As the defendants correctly point out, the Supreme Court in recent years has severely restricted procedural due process claims brought under section 1983. Under Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the federal courts will not entertain claims for intentional deprivation of property without predeprivation procedures, when the state provides the plaintiff an adequate postdeprivation remedy.[10] On the basis of Parratt and Hudson, the district court granted Deputy Ferguson’s motion for judgment notwithstanding the verdict on the due process claim.
The plaintiffs contend, however, that Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), provides an applicable exception to the Par-ratt-Hudson rule. The Supreme Court held in Logan that when an “established state procedure” destroys an entitlement, a postdeprivation remedy may not suffice. See id. at 436-37, 102 S.Ct. at 1158.
The district court in the present case held that Logan applied only to claims against political subdivisions. The court concluded that the county could have been sued, because Ferguson was acting under an established state procedure (i.e. ejecting the tenants and their belongings from the trailer, rather than removing the trailer itself), but the individual defendants did not fall within the Logan doctrine. As the plaintiffs argue, this rationale is incorrect; many cases have imposed liability on individuals who followed unconstitutional state procedures. See Messick v. Leavins, 811 F.2d 1439, 1441-43 (11th Cir.1987) (upholding claim against municipal employees who destroyed plaintiffs’ barge pursuant to established procedure, where predeprivation process was feasible); Sanders v. Kennedy, 794 F.2d 478, 482-83 (9th Cir.1986) (suit against individual police officers and city council members); Wolfenbarger v. Williams, 774 F.2d 358, 365 (10th Cir.1985) (upholding § 1983 suit against county sheriff and district attorney who acted together in causing illegal seizure), cert. denied, — U.S.-, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986); Haygood v. Younger, 769 F.2d 1350, 1357-58 (9th Cir.1985) (en banc) (suit against individuals for failure to compute prisoner’s release date properly), cert. denied, — U.S. -, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). See generally Mann v. City of Tucson, 782 F.2d 790, 794-98 (9th Cir.1986) (Sneed, J., concurring) (laying out general rules underlying Logan, Hudson, and Parratt). We agree that the Logan rationale (adherence to an established state procedure) may avoid Parratt and Hudson when property is negligently *1466 or intentionally destroyed, when predepri-vation process is otherwise feasible, regardless of who the defendants are. Nevertheless, we think the present plaintiffs' due process claim is unavailing for more fundamental reasons.
The problem we perceive here is in identifying the alleged lack of due process. In Baker v. MeCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court stressed that the due process clause "protects only against deprivations of liberty accomplished `without due process of law.'" Id. at 145, 99 S.Ct. at 2695. The Court in Baker found that the plaintiff, who was mistakenly arrested and detained pursuant to a valid warrant and probable cause, could not state a cause of action under section 1983.[11]
In Baker the court found that due process was provided[12] when the defendants met the fourth amendment requirement of a judicial determination of probable cause. See id. at 144-45, 99 S.C1. at 2694-95. Any harm caused after these procedural protections were observed might be remediable under state tort law, the Court stated, but not under section 1983. See id. at 142, 144, 146, 99 S.Ct. at 2693, 2694, 2695. The plaintiff was not entitled to any additional procedural protection.
In the present case, Rheuport and Saddoris concede that the defendants had the right and power to evict them from the mobile park under Iowa law. The writ of eviction was obtained through normal channels, and Rheuport and Saddoris even éxer-cised their right to challenge the action in the state courts before termination. The state thus afforded the plaintiffs due process; the plaintiffs received a full and fair hearing before the writ of removal was issued. Cf. Allen v. City of Kinloch, 763 F.2d 335, 336 (8th Cir.) (constitutional question was how much process was due; answer was "at a meaningful time and in a meaningful manner, an opportunity to challenge" property seizure; state remedies provided that opportunity) (citing McCollan, Hudson, Parratt, and Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)), cert. denied, - U.S. -, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985).
The plaintiffs argue, however, that at the eviction proceedings they had no notice they would be deprived of the use of their trailer home, but only of the right to place the trailer home on the premises of the mobile home park. After the writ of removal was granted by the courts, however, Rheuport and Saddoris attempted to move the trailer home but failed because they lacked money to do so. Thus, Deputy Ferguson's eviction of the plaintiffs from the home came after their own ability and efforts to prevent their loss had failed. We think it is obvious that the plaintiffs did have the notice required by the due process clause. The resulting harm to the plaintiffs thus came after due process was provided in the state court hearing. In other words, any property injury suffered by plaintiffs was not by reason of lack of due process, but by the manner in which the eviction was carried out. Therefore, we find this case, like Baker, is distinguishable from Logan and its progeny, where property was destroyed pursuant to an established state procedure without any prior notice or hearing provided to the owners of the property. See, e.g., Messick, 811 F.2d at 1441. Under the circumstances, we hold the eviction of plaintiffs Rheuport and Saddoris pursuant to a valid writ cannot be the basis of a fourteenth amendment claim.
As for any deprivations suffered during or after the writ of removal was executed, Iowa law is replete with remedies-many of which the plaintiffs have chosen to pursue. Under Baker v. Mc Cot-lan, as well as the rationale underlying *1467 Parratt and Hudson, these state tort remedies are the exclusive means by which plaintiffs can seek recompense for the alleged harm they incurred.
We now turn to the pendent state claims.[13]
B. Intentional Infliction of Emotional Distress
The first pendent state claim we address involves the intentional infliction of emotional distress. Under Iowa common law, the elements of this tort are as follows:
(1) outrageous conduct by the defendant;
(2) with the intention of causing, or reckless disregard of causing, emotional distress;
(3) plaintiff's suffering severe, or extreme, emotional distress; and
(4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.
Quade v. Heiderscheit, 391 N.W.2d 261, 266 (Iowa App.1986). This standard was first adopted in Iowa in Amsden v. Grinnell Mutual Reinsurance Co., 203 N.W.2d 252, 255 (Iowa 1972), and has been applied in many Iowa cases.
The jury found liability against defendants Woods, Sandelin, Easter Lake, and Ferguson for intentional infliction of emotional harm. On appeal, the defendants all claim that insufficient evidence was produced to support a claim under the elements outlined above. Specifically, the defendants argue that their conduct was not "outrageous" and any distress caused was not "severe."
The record reveals plentiful evidence from which a jury properly instructed in the law of intentional infliction of emotional harm could find the defendants' combined actions outrageous. First, although Deputy Ferguson was authorized to execute a writ of removal against the plaintiffs, he proceeded to have the plaintiffs' articles of personal property removed from their places inside the mobile home, placed in large sacks, and placed on public property beside a roadway. In doing so, Ferguson, over the plaintiffs' protests, effectively separated them, their residence, and their personal belongings into three diverse locations, with the plaintiffs unable to exer *1468 cise dominion over either the personalty or the mobile home. Both the personalty and the mobile home were lost. Second, Deputy Ferguson's insensitive attitude and demeaning remarks compounded the egregiousness of the events of September 12. He was a central actor in traumatizing the plaintiffs, causing them physical and psychological harm.
The private defendants also were prime contributors to the arguably outrageous course of affairs. Woods, Sandelin, and Easter Lake, either personally or through their agents, invaded the privacy of the plaintiffs' home by illegal trespass, ransacked the interior of the trailer and scattered the personal property along the roadside. There also was testimony that prior to the eviction, persons employed by the private defendants cut telephone lines leading to the plaintiffs' home, an allegation that we find particularly disturbing. The telephone line incident symbolizes the entire course of later misconduct perpetrated by the defendants under the gloss of governmental authority: the defendants harshly and destructively isolated Rheuport and Saddoris from everything that was theirs, and threatened them with further harm if they ever attempted to return to their home. Cf Guzman v. Western State Bank, 540 F.2d 948, 953-54 (8th Cir.1976) (upholding jury's finding of liability when "defendants acted in reckless disregard of the plaintiffs' security and welfare in derogation of their basic constitutional rights * * * to be secure in their home"; upholding punitive damage award when defendants, inter alia, seized plaintiffs' mobile home "in the dead of a North Dakota winter" and seized needed automobile).
The record certainly indicates that the defendants' conduct was outrageous. The invasion of the plaintiffs' home, the tearing out of the telephone lines, the yelling, ridicule, and threats, the unlawful separation of the plaintiffs from their shelter, and the destruction of their personal property were all factors to be considered.
As to severity of harm, Saddoris became so upset that he became nauseated and vomited. Rheuport later underwent medical treatment for his nerves. We find this sufficient evidence to go to the jury on the emotional distress issue.
In reaching these conclusions, we are guided by Iowa common law. It is apparent that the Iowa cases involving intentional infliction of emotional distress have turned on their individual facts.[14] In *1469 the present case, we do not have the same sensitivity to the sufficiency of the evidence as the jury and the trial judge. Clearly, this is one of those situations in which great deference should be given to the trial judge, as to whether Iowa law would recognize the proof as sufficient to sustain a claim for relief for intentional infliction of emotional harm.
Finally, we note that the trial court granted a new trial as to Deputy Ferguson's conduct on the narrow issue of whether he was acting under his scope of employment.[15] As we understand the court's rationale, if Ferguson was acting under the scope of his authority, an exclusive claim under the Iowa Municipal Tort Claim Act would be barred because of lack of sufficient notice.[16] However, we are aware that the Iowa Supreme Court recently ruled the IMTCA's special notice provision unconstitutional on equal protection grounds. See Miller v. Boone County Hosp., 394 N.W2d 776, 779-81 (Iowa 1986). Since this matter is to be remanded for a new trial on damages as to the individual defendants, the trial court may find that the previous verdict as to Ferguson's liability should be reinstated and the new trial be held on damage for all parties, including Ferguson. We therefore vacate the grant of a new trial for Ferguson and remand the issue to the trial court for reconsideration.
C. Conversion
The district court granted Ferguson's motion for judgment notwithstanding the verdict on the claim for conversion of the mobile home, based on the respondeat superior provisions of the Iowa Municipal Tort Claims Act. The court's rationale was that if Ferguson separated the plaintiffs from their mobile home, he did so within the scope of his employment. This ruling is not clear to us, but it appears that the court again found the claim time barred *1470 because of lack of notice. Under the circumstances, as we discussed on the intentional infliction claim against Ferguson, it may be that, because the notice provision is no longer applicable, the court erred. Since there is ample proof of Ferguson’s liability for conversion, we vacate the trial court’s dismissal and remand the matter for reconsideration of Ferguson’s liability for conversion as well.
As to the private defendants, we see no bar to a claim on remand for conversion. They raise no specific defense to this claim, and we see none. The plaintiffs were buying the trailer home by installment contract with Marlys Watson. The home was still registered in her name, but there is no question that as between the plaintiffs and any third party, the plaintiffs were owners of the home. The defendants had no rights in the home. Iowa law is clear on this point: “It is not a defense for a stranger to title that the possessor is not the true owner or titleholder, or that the possessor acquired possession wrongfully as against third persons.” Welke v. City of Davenport, 309 N.W.2d 450, 452 (Iowa 1981).
The only real conversion issue involves the damages allowable. The district court limited the conversion award to $1046.08, the amount the plaintiffs had paid Watson on their contract to purchase the mobile home. The court did so to prevent a “string of lawsuits" following the home, presumably referring to a suit by Watson to collect on the contract, then a suit against her brought by her lender. The court cited no cases in this regard. The plaintiffs seek $14,000, the alleged market value of the mobile home at the time they lost it. We find the district court’s reduction of damages on the conversion issue to be erroneous. On retrial, the jury should be allowed to assess damages at the full value of the converted property.[17]
D. Destruction of Chattels
The third pendent state claim on which the jury found liability against any of the four defendants involved in this appeal was for destruction of chattels. Donald Sande-lin and Easter Lake were found liable on this count. Again, the issue requiring retrial on this count is damages; there is no doubt about liability.
E. Qualified immunity
All of the defendants argue that they should be shielded from liability through qualified immunity (for Ferguson) or a form of derivative immunity (for the private defendants). Ferguson argues that he was following the county attorney’s advice and departmental policy in not removing the mobile home. The private defendants argue that they were just following Ferguson. In view of the fact that plaintiffs’ federal due process claim is invalid, Ferguson’s argument is basically moot. Moreover, we are not aware of any common-law immunity which a defendant would enjoy for tortious action. The private defendants rely on Buller v. Buechler, 706 F.2d 844 (8th Cir.1983), for the proposition that reliance on a valid court order provides immunity. This reliance is misplaced, given the gravamen of the harm alleged in the state tort claims. The pendent causes of action hinge in part on outrageous actions over an extended course of conduct, in violation of state law. The limited scope of Butter cannot immunize the private defendants from liability for these wrongs.
IV
To summarize our holdings in this confusing case, we say the following: The cause is remanded to the district court for a new trial on the issue of damages. We affirm the district court’s finding of no liability under 42 U.S.C. § 1983. As to the pendent state law claims, the plaintiffs should be allowed to seek damages under each of the four tort theories on which the original jury found liability. The district *1471 court should examine the effect the recent Miller case has had on Iowa law; it appears to us that the entry of judgment notwithstanding the verdict on the conversion and intentional infliction counts may be improper, given the Iowa Supreme Court’s subsequent invalidation of Iowa Code § 613A.5.
The judgment is reversed and remanded for further proceedings in accordance with this opinion.

. The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa, presiding.

. The district court ordered a new trial on the issue of whether Deputy Ferguson acted "within the scope of his employment" in allegedly inflicting severe emotional distress. The district court certified the appealability of this claim under Fed.R.Civ.P. 54(b).

. Apparently none of the officials involved knew then that Rheuport and Saddoris in 1979 had contracted with Watson to purchase the mobile home.

. Watson rejected their pleas for help, saying the plaintiffs were free to move the trailer at their own expense.

. One of the defendants, Marlys Watson, actually settled out of court. The record does not explain why the jury was allowed to pass on the claims against her.
Defendants Jack King, assistant Polk County Attorney, and Marjorie Sandelin, co-manager of the mobile home park, were granted judgment notwithstanding the verdict. The plaintiffs do not appeal from these rulings, so King and Marjorie Sandelin are no longer parties.

. The court reduced the damage award by limiting conversion damages to the amount of the plaintiffs’ equity in the mobile home. We discuss this aspect of the court's ruling in part III-C, infra.

. We recommend that in situations where there are multiple claims against multiple parties, the trial judge should submit special verdicts as to the various claims and damages as they affect the various defendants. In this way a verdict will not be rendered perverse if some parties are found liable on some, but not all, of the claims but not all.

. We note that the various parties, for somewhat different reasons, agree that a new trial is the most just solution to the problems inherent in the judgment below.

. The due process clause of the fourteenth amendment gives rise to claims for violations of procedural due process, for violations of incorporated provisions of the Bill of Rights, and for violations of the substantive component of the due process clause. Although their factual claims parallel cases in which this court has recognized a violation of substantive due process, the plaintiffs did not argue that theory either in the district court or this court.

. See Hudson, 468 U.S. at 533, 104 S.Ct. at 3203:
The underlying rationale of Parratt is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur.
The Court explained that there is no logical distinction between negligent and intentional unauthorized acts, and therefore the employee’s state of mind is irrelevant to the constitutional inquiry, which is "solely whether the State is in a position to provide for pre-deprivation process." See id. at 534, 104 S.Ct. at 3204.

. Plaintiff McCollan was mistaken for his brother, who had used the plaintiff's identity when he was arrested on an earlier occasion. Despite the plaintiff's pleas of misidentification, he was jailed for a few days until the mistake was realized. 443 U.S. at 140-41, 99 S.Ct. at 2692-93.

. See Martinez v. California, 444 U.S. 277, 284 9, 100 S.Ct. 553, 558 n. 9, 62 L.Ed.2d 481 (1980) ("[T]he issue [in Baker] was, assuming the plaintiff had been deprived of constitutionally protected liberty, what process was due.").

. With the sole federal claim eliminated from this case, we are faced with a question of feder. al subject matter jurisdiction. All of the defendants argue that the district court may not be allowed to retain jurisdiction over the state law claims, which until now were appended to a federal claim.
The starting point for any discussion of pen. dent jurisdiction must be United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Supreme Court in Gibbs held that a federal court may entertain state law claims in conjunction with federal claims if the following requirements are met: (1) a substantial federal question, and (2) state and federal claims derived from a common nucleus of operative fact. Id. at 725, 86 S.Ct. at 1138. The court then added its enigmatic caveat: "But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming sub-stantiality of the federal issues, there is power in federal courts to hear the whole." Id. Even then, pendent jurisdiction is "a doctrine of discretion, not of plaintiff's right." Id. at 726, 86 S.Ct. at 1139.
The existence of federal jurisdiction generally is determined as of the time the complaint is filed. When a plaintiff pleads a substantial federal claim, the federal courts may retain jurisdiction over pendent state claims even if the federal claim is dismissed, dropped, or otherwise fails at or before trial, or if the federal claim is rejected after trial, either by the trial or appellate court.
With these general rules in mind, our only jurisdictional concern is whether a sufficient federal claim was pleaded in the complaint filed on September 13, 1982. If the complaint stated a substantial federal question, the federal courts have power to decide the entire case, including any remanded version that does not involve any federal question.
To present a substantial federal question, a claim need not ultimately be successful. The complaint must be examined to see if it is arguable, colorable, or otherwise nonfrivolous. Rheuport and Saddoris averred that all of the defendants acted to deprive them of their property without due process of law, in violation of the fourteenth amendment and actionable through 42 U.S.C. § 1983. The plaintiffs thus presented a colorable federal claim, one that we have rejected only after complicated legal analysis. We find that this is a sufficient claim to confer jurisdiction.
Because we find that the district court had jurisdiction to hear this case in the first instance, we conclude that it should retain jurisdiction on remand, even though the only claims outstanding will be based on Iowa law.

. Our research has discovered several cases decided for the plaintiffs under the intentional infliction theory. See e.g, Ahrens v. Ahrens, 386 N.W.2d 536 (Iowa App.1986) (husband (defendant) obtained legal decree causing wife to be arrested and jailed for two and one-half days after child custody squabble; case sufficient to go to jury); Blong v. Snyder, 361 N.W.2d 312 (Iowa App.1984) (plaintiff was harassed "unmercifully" by supervisors until he finally resigned four months later; no dispute as to severe emotional distress; jury question presented on "outrageousness"); Randa v. U.S. Homes, Inc., 325 N.W.2d 905 (Iowa App.1982) (plaintiff spent time in hospital, was "petrified," shocked, and sick; sufficient to reach jury on emotional distress issue); Meyer v. Nottger, 241 N.W.2d 911 (Iowa 1976) (defendant mortician misled the misinformed plaintiff regarding burial arrangements for plaintiff's father, refused to let plaintiff view body, deceived plaintiff regarding arrangements; plaintiff suffered a heart spasm; sufficient to reach jury on outrageousness and distress).
Other cases have been decided for the defendants. See, e.g., Quade v. Heiderscheit, 391 N.W.2d 261 (Iowa App.1986) (landlord (defendant) sued farmer-tenant for breach of lease, claiming improper farming methods; landlord "may have overzealously" protected his land, but this does not rise to level of cause of action); Reihmann v. Foerstner, 375 N.W.2d 677 (Iowa 1985) (defendant threatened job reprisals against plaintiff, for mixed reasons; insufficient evidence of "outrageous conduct"); Northrup v. Farmland Indus., 372 N.W.2d 193 (Iowa 1985) (defendant fired plaintiff for alcoholism; supervisor "yelled" at plaintiff and made other disparaging remarks about plaintiff; not "outrageous"); Vinson v. Linn-Mar Community School Dist., 360 N.W.2d 108 (Iowa 1984) (employer engaged in pattern of discriminatory treatment toward plaintiff, including malicious acts; not outrageous); Bethards v. Shivvers, Inc., 355 N.W.2d 39 (Iowa 1984) (plaintiff was angry, lost sleep, "quivered," worried; no showing of "severe" distress); Harsha v. State Savings Bank, 346 N.W.2d 791 (Iowa 1984) (defendant breached contract, and refused to extend credit; not outrageous; plaintiff was forced to file bankruptcy and was harmed by creditors, was downhearted and depressed; insufficient distress); Roalson v. Chaney, 334 NW2d 754 (Iowa 1983) (defendant proposed marriage to plaintiff's wife; not outrageous); Poulsen v. *1469 Russell, 300 N.W.2d 289 (Iowa 1981) (plaintiff was "very, very down," "was feeling super badly," for two months; insufficient distress); Amsden v. Grinnell Mutual Reinsurance Co., 203 N.W.2d 252 (Iowa 1982) (insurance company delayed payment of plaintiff's loss, allegedly in bad faith; not outrageous).

. The trial court, in denying Ferguson's motion for judgment notwithstanding the verdict, stated:
The Court finds that Defendant Ferguson committed acts which go beyond merely executing the writ of removal. The jury found Defendant Ferguson liable under the due process claim. This required them to find that he knew plaintiffs' had a possessory interest in the mobile home yet acted to deny them this interest. While the jury may have held that this knowing deprivation was, by itself, outrageous, this Court is convinced that the deputy's action towards the plaintiffs which was not required in executing the writ was an aggravating factor and a basis for the jury's finding of outrageous conduct, These aggravating factors lead the Court to find and conclude that the behavior for which the deputy was held liable for intentional infliction of emotional distress went beyond the scope of his employment. Consequently, plaintiffs can prevail on this claim against the deputy without complying with § 613A.5. Accordingly, the Court will not grant Defendant Ferguson's motion for a judgment notwithstanding the verdict on the intentional infliction of emotional distress claim.
The district court later amended its decision arid granted Ferguson a new trial on the scope of employment issue. The court did so because the deputy was not allowed to litigate the question at trial.

. Iowa Code § 613A.5 (Supp.l987) provides:
Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 [vicarious tort liability for municipalities] or section 613A.8 [duty to defend employees acting "within the scope of their employment or duties"] or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; pro. viding, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice.

. Of course, we cannot be certain what amount of damages the original jury apportioned for conversion, given the general verdict. This uncertainty will be eliminated on retrial.