**CONDOR CORPORATION, a Minnesota corporation, Appellant,**

v.

**CITY OF ST. PAUL, a municipal corporation, Appellee.**

No. 89–5413.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1990.

Decided Aug. 17, 1990.

Rehearing Denied Sept. 27, 1990.

Frank J. Walz, Minneapolis, Minn., for appellant.

Jerome J. Segal, St. Paul, Minn., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge, and HANSON,[*] Senior District Judge.

LAY, Chief Judge.

Condor Corporation filed suit challenging the City of St. Paul's denial of its application for a conditional use permit to operate a heliport. Condor asserts in its complaint federal question jurisdiction under 28 U.S.C. § 1331 (1988). Condor raises three claims: (1) Condor's permit was wrongfully denied for reasons of federal preemption; (2) the denial of the permit violated Condor's substantive due process rights under the United States Constitution; (3) the denial of the permit was an invalid zoning action under Minnesota law. The district court[1] granted summary judgment in favor of the City on all three claims. We find Condor's Supremacy Clause claim to be frivolous and dismiss it for lack of jurisdiction. We further find Condor has failed to assert a claim based upon substantive due process. However, we reverse and remand the pendent state claim for further proceedings consistent with this opinion.

BACKGROUND

Condor Corporation owns a six acre parcel of real estate located at the corner of University and Cleveland Avenues in St. Paul, Minnesota. This location is zoned Industrial–1 (I–1), and has most recently been used as a truck terminal. The immediately surrounding property is also zoned I–1. Residential property is located within 1100 feet of Condor's property.[2] Condor seeks to use this site as a privately operated heliport for two helicopter services: Life

---

[*] The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. This estimate is taken from the report prepared by a consultant hired by the City to study Condor's proposal. Estimates of the closest residential area varied, ranging up to within 1800 feet of Condor's property.

Link III, an emergency medical service operated by three area hospitals; and JR Copters, a helicopter leasing service that currently leases helicopters to a local television station to broadcast weather and traffic conditions.

In 1987, heliports were classified as a conditional permitted use in I–1 zoned areas, which allowed the City to impose conditions on the issuance of a heliport permit.[3] *See* St. Paul, Minn., Zoning Code, § 60.614(2) (1987). However, since the City's Zoning Code did not identify any specific conditions required for the issuance of a heliport permit,[4] the City imposed a one year moratorium on October 7, 1987 on the issuance of heliport permits in order to study zoning issues. St. Paul, Minn., Res. No. 87–1377 (Oct. 7, 1987) (Joint App. at 341).[5] In 1988, Condor requested that the moratorium be lifted to allow the City to consider its application for a conditional use permit to operate a heliport. In response to Condor's request, the City adopted a resolution which allowed Condor to apply for the permit while the moratorium remained in effect:

Resolved, that the City Council may repeal the moratorium in I–1 zoning districts prior to October 9, 1988, if all the following steps and conditions described below are complied with:

1. While the moratorium is in effect, any applicant for a special condition use permit agrees in writing to the procedure outlined in this resolution and to the use of a $5,000 consultant fee which will assist the city in determining what conditions for heliports are appropriate and within the city's authority. The fee is to be paid by the applicant.

2. The applicant then applies for a special condition use permit, according to regular city regulations and procedures.

3. City staff, with the assistance of the consultant and legal counsel, will study and draft for Planning Commission review conditions for issuance of a special condition use permit. These may be any restrictions within the city's authority, including but not limited to: number of helicopters, type of helicopters, hours of operations for non-emergency flights, designation of flight paths, on-site noise abatement, special building height limits, and operational restrictions and their enforcement.

4. The Planning Commission's Zoning Committee will hold a public hearing on the permit application. After the public hearing, the Planning Commission will act to approve or deny the permit. Planning Commission action is subject to appeal to the City Council * * *.

5. If the Planning Commission approves a permit and no appeal is filed, the moratorium may be lifted in I–1 zoning districts. If an appeal is filed and the City Council approves a permit, the moratorium may be lifted in I–1 zoning districts. If a permit is not approved, the moratorium remains in force in all zoning districts.

6. If special condition use permit applications for a heliport are requested after the moratorium is lifted but before zoning text amendments are adopted by the City Council, these applications shall follow procedures 1 through 4 above.

St. Paul, Minn., Res. No. 88–1138 (Jul. 14, 1988) (J.App. at 351) [July 14 resolution].

Condor paid the $5000 fee and filed an application for a special condition use per-

---

**3.** This is in contrast to an unconditional permitted use, where the property owner can use the property without a permit. A conditional use permit is issued when a particular use, though generally compatible with the use classification of a particular zone, is not permitted to enter the zoned area as of right due to concerns about special problems or hazards associated with the use or the location. *Amoco Oil Co. v. Minneapolis*, 395 N.W.2d 115, 117 (Minn.Ct.App.1986).

**4.** This ordinance has been amended by the City since the commencement of this lawsuit, and heliports are now a permitted use, subject to four specified conditions in I–1 zoned areas; however, the heliport can only be located at an airport. *See* St. Paul, Minn., Zoning Code § 60.614(8) (1989).

**5.** The moratorium was extended for an additional one year period on September 22, 1988. *See* St. Paul, Minn., Res. No. 88–153 (Sept. 22, 1988) (J.App. at 378).

mit to operate a heliport. Condor, aware of the City's concern that conditions for heliports in I–1 districts be developed, proposed several conditions for the use of its heliport designed to address noise concerns in residential areas. A consultant hired by the City found the heliport would be compatible with adjacent land uses, and concluded that Condor's proposed site was "an ideal location for a heliport." Condor's proposed twenty operations per day, i.e., total takeoffs and landings, and proposed approach and departure paths were deemed reasonable. The consultant also performed a noise assessment analysis, based on the noise created by the largest and noisiest helicopter Condor intended to operate, and found the noise generated by Condor's estimated twenty operations per day was compatible with local residential development.[6]

The July 14 resolution instructed the consultant to propose conditions to govern the operation of heliports, such as hours of operation, flight paths, and noise problems. The consultant accordingly suggested that the City enter into an agreement by which Condor would agree to restrict the users of the heliport with respect to certain heliport operations matters. The consultant's proposed agreement covered hours of operations, flight paths, level of activity, noise abatement procedures, and training and maintenance operations. The City also received an opinion from its attorney that "[i]t may be possible for the owner of the heliport to enter into an agreement with the City whereby the owner, voluntarily, would agree to restricting the use of its heliport."[7] Consequently, Condor and representatives of the City prepared a draft operations agreement addressing the issues suggested by the consultant. In the meantime, Condor received approval from the FAA for the operation of the heliport.

On September 29, 1988, after a public hearing at which members of neighborhood groups opposing the heliport testified, the City Zoning Committee recommended denial of the permit. The City Planning Commission referred the matter back to the Zoning Committee for consideration of the proposed operations agreement between Condor and the City. The Zoning Committee again recommended denial of the permit. On November 4, 1988, however, the Planning Commission overturned the Zoning Committee's action, and approved the permit, imposing as conditions those proposed in the operations agreement.

Neighborhood groups opposing the heliport appealed to the City Council, which held a public hearing on December 15, 1988. The City Attorney attending the hearing informed the council that the proposed operations agreement would not be legally enforceable because it covered subject-matter areas preempted by FAA regulations. The City Council heard testimony from citizens opposing the heliport, and from representatives of Condor, Life Link III and JR Copters. In addition, an acoustical vibrational engineer presented the results of noise assessment tests performed at Condor's request. The City Council voted to grant the appeal, and later adopted a resolution denying the permit. The basis for the City Council's action was its conclusion that the Planning Commission erred in assuming that the City and Condor could enter into a private agreement to regulate operations at the heliport. St. Paul, Minn., Res. No. 89–139 (Jan. 29, 1989) (J. App. at 411). Condor then filed suit in the district court, challenging the City Council's denial of the permit.

DISCUSSION

This appeal is before this court on review of the district court's grant of summary

---

6. The consultant noted that up to 162 operations per day would be the minimum necessary before the noise would be incompatible with the surrounding area.

7. Letter From Asst. City Attorney Jerome Segal to Peggy Reichert (Sept. 22, 1988) (J.App. at 381). This opinion was based on the holding in *Santa Monica Airport Ass'n v. City of Santa Monica,* 659 F.2d 100 (9th Cir.1981) that there is no conflict with FAA regulations when a munic-

ipality acting as a proprietor of an airport enacts certain regulations governing the users of the airport. The Assistant City Attorney pointed out that the City could not condition issuance of the permit on Condor's acquiescence to the agreement, but that the City could consider Condor's voluntary agreement to restrict users of the heliport in reviewing Condor's permit application.

judgment in favor of the City. There are no disputed facts in this case and we review the grant of summary judgment only to determine if judgment should have been granted as a matter of law. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984). We review this case in a light most favorable to Condor, the party against whom judgment was granted. *In re Stevenson Assoc., Inc.*, 777 F.2d 415, 418 (8th Cir. 1985).

We first consider our jurisdiction in this case. Condor sought relief in the federal district court on the basis of its allegations of federal questions under the United States Constitution. It asserts that the denial of the permit by the City (1) violates the Supremacy Clause of the Constitution and (2) was arbitrary and capricious and thereby offends the substantive due process clause of the 14th amendment. We must determine whether these federal claims present substantial questions sufficient to confer federal jurisdiction. *See, e.g., United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *see also* 13B Wright, Miller & Cooper *Federal Practice & Procedure*, § 3564, at 66–67 (1984).

The Supremacy Clause Claim

■ We find Condor's claim under the Supremacy Clause to be specious and totally insubstantial. We therefore dismiss the claim for lack of jurisdiction.[8]

Condor's argument is that regulatory aspects of airports or heliports have been preempted by federal law. Condor urges that the City's denial of the permit was based solely on the premise that the proposed operations agreement was unenforceable because it "regulates areas governed by federal and state regulations," and that the proffered inability to regulate

federally preempted flight operations is somehow violative of the Supremacy Clause. Condor contends the City effectively intruded into federally preempted aircraft activities by *prohibiting them* from operating a heliport. In other words, to quote Condor, "it is a wrongful prohibition of a federally-regulated activity, in violation of the Supremacy Clause."[9]

■ Condor concedes its argument is novel and without precedent. We think it completely misses the mark. The doctrine of federal preemption sufficient to provide federal jurisdiction is triggered by a state or local government's regulatory activities that conflict with, or are preempted by, federal law. *See, e.g., First National Bank of Eastern Arkansas v. Taylor*, 907 F.2d 775 (8th Cir., 1990). Here, Condor asserts the City's action in denying its permit conflicts with the FAA's regulation of airspace. We see no conflict between a city's regulatory power over land use, and the federal regulation of airspace, and have found no case recognizing a conflict. *See, e.g., Wright v. County of Winnebago*, 73 Ill.App.3d 337, 29 Ill.Dec. 347, 352, 391 N.E.2d 772, 777 (1979) (FAA does not preempt local zoning authority); *Garden State Farms, Inc. v. Bay*, 77 N.J. 439, 390 A.2d 1177 (1978) (same). We therefore reverse and remand to the district court to dismiss the claim for lack of federal jurisdiction.

Due Process Claim

■ Under *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), a federal court does not lack jurisdiction merely because a complaint fails to state a cause of action. *Id.* at 682, 66 S.Ct. at 776. However, where the claim is so insubstantial

---

8. We note that under *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), we have jurisdiction to decide constitutional claims; however, where those claims are totally frivolous, federal question jurisdiction should not be entertained. *See, e.g.,* Wright, Miller & Cooper, *supra,* § 3564, at 68.

9. Condor cites the City's study of heliports as follows:

The noise of the helicopter takeoffs and landings at the heliports make heliports incompatible with the City.
The City has much less control of heliports than other land uses.... [T]he control of noise, number of flights (intensity), and flight paths at heliports (access) has been preempted by the federal and state governments. *Until the City has such control*, the City should prohibit heliports from the City. [J.App. 420–21; emphasis added.]

that it is frivolous, the federal court lacks jurisdiction to entertain it. *See, e.g., Rheuport v. Ferguson,* 819 F.2d 1459, 1467 n. 13 (8th Cir.1987). Although the law is now unsettled in our circuit as well as others as to the parameters of substantive due process in zoning cases, *see Lemke v. Cass County, Nebraska,* 846 F.2d 469 (8th Cir. 1987); *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986); *compare Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.) (refusing to recognize a substantive due process claim in a zoning case), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), we deem the overall boundaries of substantive due process to be defined by the Supreme Court's decisions in cases raising claims of substantive due process violations under 42 U.S.C. § 1983. Whether government action is arbitrary or capricious within the meaning of the Constitution turns on whether it is so "egregious" and "irrational" that the action exceeds standards of inadvertence and mere errors of law. *See, e.g., Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Baker v. McCollan,* 443 U.S. 137, 147, 99 S.Ct. 2689, 2696, 61 L.Ed.2d 433 (1979) (Blackmun, J., concurring) (conduct challenged is not outrageous and does not shock the conscience); *Myers v. Scott County,* 868 F.2d 1017, 1019 (8th Cir.1989) (substantive due process reserved for truly egregious violations); *New v. City of Minneapolis,* 792 F.2d 724, 726 (8th Cir.1986) (sufficiently egregious use of force states substantive due process claim); *see generally* Rubin, *Deprived Without Due Process: The Fourteenth Amendment and Abuse of Power,* 16 N.M.L.Rev. 199 (1986).

■ We need not pause long over Condor's substantive due process claim. Condor's claim turns on its assertion that the City wrongfully denied its permit because of the erroneous legal advice of the City attorney. Assuming this to be true, that the advice was a misstatement of law, this constitutes nothing more than a misjudgment of law, and clearly cannot be deemed arbitrary, capricious or so unreasonable to be egregious. *See, e.g., Daniels,* 474 U.S. 327, 106 S.Ct. 662. We therefore find that

Condor's substantive due process claim fails to state a claim for relief. We remand and direct the federal district court to dismiss the claim. However, since we believe this to be a close call under the case law as we interpret it, we order dismissal for failure to state a claim without denying our jurisdiction to pass on the claim. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773; *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1347 (5th Cir.1985) (failure to state an adequate claim under 42 U.S.C. § 1983 does not deprive the federal court of jurisdiction); *see also* Wright, Miller & Cooper, *supra,* § 3564, at 73–75.

■ Since we find the substantive due process claim was substantial enough to support federal jurisdiction, we conclude that federal jurisdiction to pass on the state pendent claim existed. However, under principles of pendent jurisdiction, we think it would have been more appropriate for the federal district court, once rejecting the federal claims, to have exercised its discretion and not passed on the pendent claim. We think this is particularly true where the sole question relates to zoning authority under municipal and state laws. These issues clearly are not federal questions and are better left to the state courts to review. The judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible. We also recognize within principles of federalism the necessity to provide great deference and comity to state court forums to decide issues involving state law questions. *See, e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ The question we now face, however, is once the federal court has exercised its discretion to pass on the merits of the state law claim whether it is in the interest of all parties, as well in the interest of judicial economy, to abstain at the appellate level from deciding the state law issue. In *Gibbs,* the court addressed the issue of pendent jurisdiction, and pointed out that the decision to reach a state law claim rests

in the discretion of the lower court. 383 U.S. at 726, 86 S.Ct. at 1139. Issues such as judicial efficiency, convenience, and fairness to the litigants are relevant to the federal court's exercise of its discretion. *Id.* In *Curtis v. Sears Roebuck & Co.,* 754 F.2d 781 (8th Cir.1985), we commented on *Gibbs* as follows:

In context, the Supreme Court's statement in *Gibbs* [that the state claim should be dismissed where the federal claim is dismissed before trial] means that when a federal claim drops out before trial, and a complete trial of the facts would be necessary to determine the state claim, the federal court should not proceed with such a trial.

*Id.* at 785.

Judicial efficiency favors our deciding the issue presented here. It is relatively uncertain at this late date whether Condor could still obtain review of the issue in state court.[10] Furthermore, the parties have been engaged in litigation for several months and have fully briefed the case. Only issues of law are to be resolved, with no further hearings on issues of fact necessary. The district court has decided the merits of the case. Notwithstanding our concern that it would have been better in the district court to have not passed on the pendent claim, we conclude the state pendent claim should now be reviewed.

The State Claim

■ A court's scope of review in zoning matters is limited in order to protect the municipality's management of its land use planning function. *Swanson v. City of Bloomington,* 421 N.W.2d 307, 311 (Minn. 1988). We therefore consider only whether the City's action is reasonable, or whether under state law it is impermissibly arbitrary and capricious. *Id.* Summary judgment can be granted based on the record made before the government body. The focus in such a case is the legal sufficiency of and factual bases for the reasons given for the action taken. *Id.* at 313.

■ A zoning decision is arbitrary if the applicant meets the standards specified by a certain zoning ordinance, or where no standards are specified, the record demonstrates that the proposed use is compatible with the uses authorized in that zone and the public health, safety or welfare is not endangered. *Zylka v. City of Crystal,* 283 Minn. 192, 195, 167 N.W.2d 45, 49 (1969). As noted earlier, the City's zoning ordinance at the time of Condor's permit application did not establish any conditions for granting a heliport permit. Thus, we review the record to determine whether the proposed heliport is compatible with an I–1 zoned district, and whether there is any evidence that the heliport would endanger public health, safety or welfare.

The district court did not review the City's actions under this standard, but found that Condor's permit application could be denied based on the existence of the moratorium enacted by the City. The moratorium was enacted pursuant to Minn. Stat. § 462.355, subd. 4 (1988), which authorizes a municipality's use of an "interim" zoning ordinance, or moratorium, to allow time for study of zoning and planning issues. The validity of a moratorium as a land use planning device was first recognized by the Minnesota Supreme Court in *Almquist v. Town of Marshan,* 308 Minn. 52, 245 N.W.2d 819 (1976). The *Almquist* court recognized the utility of a moratorium "to prevent nonconforming uses which might destroy the comprehensive zoning plan ultimately adopted, as well as to derive the benefits of permitting a democratic discussion and participation by citizens and developers in drafting long-range land use plans." *Id.* at 65, 245

---

**10.** The City's Zoning Code does not provide a time limit for appealing decisions of the city council to the district court. The Minnesota Court of Appeals has held in a similar situation that the aggrieved party must appeal the municipality's decision within a "reasonable" time. *See Fryberger v. Township of Fredenberg,* 428 N.W.2d 601, 605–06 (Minn.Ct.App.1988). Although Condor may have commenced this action in the federal district court within a reasonable time, it is unclear whether it could still timely commence an action in state court, or whether running of the reasonable time limit would be tolled during the pendency of the action in the federal court. *Cf. Bond v. Serano,* 566 A.2d 47 (D.C.App.1989) (statute of limitations not tolled during pendency of action in federal court).

N.W.2d at 826. The court upheld the moratorium adopted in that case, finding that "where a municipality enacts in good faith and without discrimination, a moratorium on development which is of limited duration, [the moratorium] is valid if upon enactment, the study proceeds promptly and appropriate zoning ordinances are expeditiously adopted when it is completed." *Id.*

■■■ Were we addressing the validity of the City's moratorium on heliports, we would be inclined to find this moratorium meets the "good faith" standard established in *Almquist.* The moratorium cannot, however, be considered without reference to the July 14 resolution that allowed consideration of a heliport permit to proceed "according to regular City regulations and procedures." This resolution partially repealed the moratorium since it allowed consideration of heliport permit applications under normal city zoning rules and procedures.[11] Of course, the July 14 resolution recognized that an application might be denied, and thus provided that the moratorium would remain in effect upon denial of a permit.

The July 14 resolution contemplated the possibility that permits would be granted if applications were found favorable, although it was not viewed as a "precommittment * * * to recommend or approve Condor Corporation's permit." Department of Planning Memorandum, July 5, 1988 (J.App. at 350). The July 14 resolution, while maintaining the moratorium on the issuance of permits, effectively allowed permits to be considered under the standards established by the zoning code. The City received the benefit of a consultant's report that not only evaluated Condor's proposal, but also provided the City with

guidelines on regulating heliports in general. The City also received the benefit of full participation by its citizens, as is evident from the extensive debate that occurred before the Zoning Committee and the City Council. Therefore, the City's use of the moratorium and the resolution creating an exception to the moratorium fulfilled the zoning and planning concerns recognized by the *Almquist* court.

The district court found the City's consideration for enacting the July 14 resolution was lost when it discovered it could not regulate certain heliport operations, those matters being preempted by the FAA. It is apparent from the record that the City was attempting to establish conditions for the issuance of heliport permits in I–1 zoned districts, and used the July 14 resolution in an attempt to define those conditions.[12] Condor, aware of this concern, expressed its willingness to work with City authorities "on the most appropriate paths to minimize noise, consistent with safety considerations." Condor's Application for Special Condition Use Permit, July 18, 1988 (J.App. at 355). Additionally, Condor negotiated with the City and was ready to enter into an operations agreement that restricted hours and number of operations and flight paths, and created a citizen complaint system, all to accommodate the City's concerns over uncontrolled heliports. *See* Proposed Private Heliport Use Agreement (J.App. at 33). Condor's application and the consultant's report provided the City with the information required by the July 14 resolution. At that point, the City was bound to evaluate the permit under the standards of the existing zoning code. Although heliports were a conditional permit-

---

11. This conclusion is supported by the record before the district court, which included the advice of the City's attorney: "If Alternative B outlined in the June 24th Memorandum [describing the July 14 resolution] is followed by the Council, I would recommend that the *proposed partial repeal of the Ordinance* [the moratorium] await the development of the text of the proposed special conditions for heliport use." Letter from Jim Hart, Assistant City Attorney to Councilmember Kiki Sonnen (June 28, 1988) (J.App. at 347). Thus, even the City viewed the

effect of the July 14 resolution as a partial repeal of the moratorium.

12. *See* Planning Staff Memorandum, June 24, 1988 (J.App. at 345–46): "From the consultants, the city would get much of the same information that we expect to get later from the Metropolitan Council study except that it will be tailored to the particular site proposed by Condor. * * * We simply see Alternative B [the July 14 resolution] as a faster way to get pertinent information. Our recommendation will follow the direction this information takes us."

ted use without specific conditions, *see* St. Paul, Minn., Zoning Code § 60.614(2) (1987), the planning commission was able to impose "reasonable conditions and limitations * * * as are determined to be necessary to fulfill the spirit and purpose of the zoning code and to protect adjacent properties." St. Paul, Minn., Zoning Code § 64.300(d).[13]

■ Conditions and limitations for Condor's permit were proposed, but eventually were deemed to be preempted.[14] The City's inability to regulate those matters, however, does not defeat Condor's permit. Condor's proposed heliport had already been found compatible with the surrounding uses, including the residential areas. No conditions (other than those in the proposed operations agreement) relevant to public health, safety, or welfare were proposed or considered. Although the City could not regulate certain matters that it felt were important, its review of Condor's application ensured that the concerns of its zoning code were met. That review established that Condor's proposed heliport did not infringe on public health, safety, or welfare to the extent that denial of the permit was required.

■ The Minnesota Supreme Court has strictly construed zoning ordinances against the municipality and in favor of the property owner. *See Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984). This rule of construction assists us in reaching our decision. Although this case involves a moratorium enacted to allow for study of zoning issues, it also involves a resolution limiting that moratorium. The resolution provided for the consideration of permits based on *regular city regulations and procedures.* The City was therefore obligated to consider the merits of the application under its then existing zoning code. The City could not deny the permit based on its inability to regulate heliport operations, since even without those conditions, the proposed heliport operation was not shown to interfere with the concerns the zoning code seeks to protect. Therefore, we hold the City's denial of the permit because of its inability to control certain heliport operations was an arbitrary action under state law.[15]

We therefore find the district court erred in denying Condor's motion for summary judgment. We do not mean to intimate that the City's use of the moratorium to study zoning issues was improper. How-

---

**13.** The purposes of the zoning code are many, and include protection of health, safety and welfare; to protect all areas of the city from encroachment resulting from incompatible uses; to regulate the use of land. *See* St. Paul, Minn. Zoning Code, § 60.101.

**14.** Indeed, even before the Planning Commission considered Condor's application for the first time, the City was aware that it could not regulate those operations. *See* Letter from Asst. City Attorney Jerome Segal, *supra* note 7.

**15.** We believe there is also ample evidence in the record that the primary force behind the City's denial of the permit was neighborhood opposition to the heliport. Several citizens testified about their concerns of noise and flight paths over residential areas. However, this testimony was largely speculative and subjective. There was no expert testimony concerning possible detrimental noise impact on the residential areas of the City. Instead, the only expert evidence on noise impact was favorable to Condor. Both the City's consultant and Condor's noise engineer reported that the noise impact would

be compatible with the surrounding residential areas. There was no other evidence before the City Council that refuted the consultant's conclusion that the proposed heliport would be compatible with all adjacent land uses.

Neighborhood opposition, in and of itself, is a legally insufficient reason for denying a permit where the applicant has established compatibility. *C.R. Investments, Inc. v. Village of Shoreview,* 304 N.W.2d 320, 325 (Minn.1981); *Barton Contracting Co. v. City of Afton,* 268 N.W.2d 712, 718 (Minn.1978). As discussed, the city argues that the permit was denied because it learned that it could not enter into the private operations agreement by which Condor would restrict users of the heliport. However, the majority of the testimony and discussion at the hearing centered around neighborhood concerns about the operation of the heliport. Under either reason the law would dictate a finding that the City's actions were arbitrary and capricious under state law. "[D]enial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare." *Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984).

ever, the City changed the manner in which that moratorium could be viewed when it enacted the resolution allowing permit applications to proceed despite the moratorium. We reverse and remand to the district court to dismiss count one for lack of jurisdiction, to dismiss count three for failure to state a claim for which relief can be granted, and to reverse and enter summary judgment in favor of Condor in accord with this opinion on count two.

It is so ordered.

BEAM, specially concurring.

I concur in the judgment of affirmance.