77 F.3d 1063
 KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, Plaintiff-Appellant,
v.
REIMER & KOGER ASSOCIATES, INC., a Kansas Corporation;
Ronald Reimer, an individual; Kenneth H. Koger, an
individual; Clifford W. Shinski, an individual; Brent
Messick, an individual; Robert Crew, an individual;
Sherman Dreiseszun, an individual; Leland Gerhart, an
individual; I.I. Ozar, an individual; Raymond Gifford, an
individual; Harry S. Jonas, an individual; Randall M. Nay,
an individual; Frank Sebree, an individual; Tony Salazar,
an individual; Philip Pistilli, an individual; Michael K.
Russell, an individual; Gage & Tucker, a law partnership;
Peat, Marwick, Mitchell & Co., an accountancy firm; KPMG
Peat Marwick, an accountancy firm; Robert Spence, an
individual; Thomas S. Morgan, co-executor of the estate of
Frank S. Morgan; Marilyn J, co-executor of the estate of
Frank S. Morgan; Isabel A. Kiene, executrix of the estate
of Ralph E. Kiene, Defendants-Appellees,
Shook, Hardy & Bacon; C. Patrick McLarney, Substituted for
Shook Hardy law firm; Blackwell Sanders Matheny
Weary & Lombardi, L.C.,
Intervenor-defendant-Appellees.
 No. 95-3499.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1995.
Decided Feb. 27, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied April
18, 1996.
 
 Appeal from the United States District Court for the Western District of Missouri, Brook D. Bartlett, Judge.
 Kenneth Ross, Chicago, Illinois, argued (Robert F. Coleman, Eugene I. Pavalon and Geoffrey L. Gifford, Chicago, Illinois, on the brief), for appellant.
 John Villa, Washington, DC, argued (Robert J. Campbell, Elizabeth D. Nay, James E. Kelley, Jr., Charles W. German, Brant M. Laue, Robert Thompson, Robert R. Barton, Kansas City, Missouri, on the brief), for Estate of Frank Morgan, et al. (Mary G. Clark and Eric A. Kuhl, Washington, DC and Gene Voights, Kansas City, Missouri, on the brief), for Shook, Hardy, and Bacon. (Donald W. Rose, New York City and William F. Lloyd, Jeffrey R. Tone and Nancy Temple, Chicago, Illinois, on the brief), for KPMG Peat Marwick LLP and Robert W.L. Spence. (Kathleen A. Hardee, John K. Sherk, III and Gregory F. Maher, Kansas City, Missouri, on the brief), for Reimer & Koger and Assoc., Inc., Kenneth Koger, Robert Crew, Brent Messick and Clifford Shinski. (R. Lawrence Ward and Russell S. Jones, Jr., Kansas City, Missouri, on the brief), for Blackwell Sanders Matheny Weary & Lombardi, L.C.
 Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 In this, the fourth interlocutory appeal in the Kansas Public Employees' Retirement System (KPERS) case, KPERS seeks review of the district court's[1] order enjoining KPERS from prosecuting lawsuits in Kansas based on the same claims being litigated in this case. Because we conclude that the effect of the Kansas lawsuits is to subvert the district court's removal jurisdiction, we affirm the district court's order.
 
 
 2
 KPERS invested $65 million in debentures of Home Savings Association, a Missouri-based savings and loan that failed. The RTC was appointed receiver for Home Savings. KPERS filed this case in Kansas state court on June 5, 1991 against Reimer & Koger Associates, KPERS's former investment advisers, seeking to recoup the $65 million. While the case was still pending in state court, KPERS also joined as defendants various officers and directors of Home Savings; Michael Russell, KPERS's own former chairman of the board; KPMG Peat Marwick, KPERS's accountants; and Gage & Tucker, KPERS's former lawyers. KPERS alleged only state-law claims.
 
 
 3
 The defendants promptly moved for summary judgment in the state court on the ground that KPERS's suit was barred by the Kansas two- and three-year statutes of limitations. The Kansas court ruled that KPERS was not subject to any statute of limitations and so denied the summary judgment motion. Then the Home Savings defendants impleaded the RTC, Home Savings's successor, which has a statutory right to remove any case to which it is a party to its choice of three federal district courts. When KPERS learned that the RTC had been impleaded, it had the third-party claims severed by ex parte proceedings in the Kansas court before the RTC could remove. Despite the severance, the RTC removed the entire case to the federal district court for the Western District of Missouri; the district court held that the severance by the Kansas court was ineffective to prevent removal of the entire case, and we affirmed that holding. KPERS v. Reimer & Koger Assocs., 4 F.3d 614 (8th Cir.1993) (KPERS I ), cert. denied, --- U.S. ----, 114 S.Ct. 2132, 128 L.Ed.2d 862 (1994).
 
 
 4
 In the Western District of Missouri, the RTC moved to dismiss the third-party claims against it, and the district court granted its motion. The Home Savings defendants moved for reconsideration of the dismissal and the court granted the RTC the right to intervene for the limited purpose of defending the reconsideration motion and protecting its right to any derivative claims belonging to Home Savings that KPERS might assert; the court then reaffirmed its earlier dismissal of the claims against the RTC and held that KPERS was not asserting any derivative claims. In the wake of the RTC's dismissal, KPERS moved to remand the case to the Kansas state court, but the district court decided to retain jurisdiction of the case under 28 U.S.C. § 1367 (1994), the supplemental jurisdiction statute.
 
 
 5
 KPERS threatened to sue two additional law firms, Shook, Hardy, and Bacon and Blackwell, Sanders, in state court.[2] The law firms sought leave to intervene in the federal case. The district court allowed Shook, Hardy to intervene as a defendant and denied Blackwell, Sanders's motion to intervene. We reversed and allowed Blackwell, Sanders to intervene, although not as a defendant. KPERS v. Reimer & Koger Assocs., 60 F.3d 1304 (8th Cir.1995) (KPERS II ). KPERS amended its complaint in federal court to add Shook, Hardy as a defendant.
 
 
 6
 Once in federal court, the defendants renewed their motion for summary judgment on the basis of the statute of limitations. The district court reconsidered the question decided by the state court and concluded that KPERS was subject to a statute of limitations, but that the applicable statute was ten years. The defendants took an interlocutory appeal from the holding that the ten-year statute was applicable. We reversed, holding that the ten-year statute was inapplicable and remanding for determination of which of the shorter statutes should be applied. KPERS v. Reimer & Koger Assocs., 61 F.3d 608, 614-16 (8th Cir.1995) (KPERS III ), cert. denied, --- U.S. ----, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996).
 
 
 7
 On August 23, 1995, about a month after we announced our decisions in KPERS II and KPERS III, KPERS filed two new cases in the Kansas courts. In the first of these cases, KPERS sued Michael Russell; the Reimer & Koger defendants; and Shook, Hardy for damages arising out of the Home Savings investments. In the second, KPERS sued Peat, Marwick for negligence and breach of contract in auditing KPERS. Earlier, in January 1995 KPERS had also sued Blackwell, Sanders in state court for damages arising out of the Home Savings investments. One of the counsel for KPERS made a statement to the press, made part of the record below, that KPERS filed the cases in Kansas because of a "multitude of problems and issues that are causing delays in federal court, coupled with what we think is an erroneous decision by the 8th Circuit in interpreting the Kansas statute of limitations."
 
 
 8
 On September 11, 1995, Blackwell, Sanders and Shook, Hardy impleaded the RTC in their respective state court cases. The next day, the RTC removed both cases to the federal district court for the Western District of Missouri. Peat, Marwick did not implead the RTC and, therefore, its case is still pending in state court.
 
 
 9
 Blackwell, Sanders and Shook, Hardy moved in the original federal court action to enjoin KPERS from filing further state court actions against them, and Peat, Marwick moved to stay the pending state court action. In a brief filed with the district court in opposition to the motions for preliminary injunctions, KPERS stated, "[I]nsofar as the Eighth Circuit was purporting to interpret Kansas law, KPERS has every right to seek reexamination of those questions in the courts of its own state, and the duty to do so when an erroneous federal court decision may effectively rob it of its day in court. State courts, of course, are not bound to follow federal interpretations of state law."
 
 
 10
 The district court granted the injunctions. The court held that KPERS asserted claims in the new state lawsuits that were substantially identical to the claims KPERS asserted against the same parties (other than Blackwell, Sanders) in the original KPERS case pending before the district court. The court observed that "[b]ased on the information furnished by the parties ... the reason the August 23, 1995, cases were filed by KPERS was to attempt to obtain Kansas courts' more favorable rulings on the statute of limitations issue decided by the 8th Circuit Court of Appeals and also to escape a multitude of problems and issues that are causing delays in federal court." The court held that the Anti-Injunction Act, 28 U.S.C. § 2283 (1994), did not prohibit the grant of injunctive relief in this case. The court also held that the All Writs Act, 28 U.S.C. § 1651(a) (1994), authorized the relief, and that relief was appropriate under Northwest Airlines v. American Airlines, 989 F.2d 1002 (8th Cir.1993). The court preliminarily enjoined KPERS from filing any further lawsuits arising out of the Home Savings investments against Shook, Hardy; Reimer & Koger; Blackwell, Sanders; Peat, Marwick; and defendants related to the firms named above. The court also enjoined KPERS from pursuing its existing Kansas case against Peat, Marwick.
 
 
 11
 KPERS appeals the injunctions, arguing that they were not authorized by the All Writs Act, 28 U.S.C. § 1651(a). It also argues that the district court should have denied the injunctions and remanded the original federal case to the state courts under federal abstention doctrines.
 
 I.
 
 12
 KPERS devotes much of its brief to arguing that the district court erred in refusing to remand the first KPERS case to the state court after the RTC was dismissed. KPERS has not sought interlocutory review of that question directly. However, KPERS argues that if the district court erred in retaining jurisdiction, the court then lacks jurisdiction over the case and any injunction issued to protect the court's non-existent jurisdiction of this case is therefore erroneous.
 
 
 13
 We observe first, that the district court articulated two theories to justify its refusal to remand the case. First, the court concluded that it was an appropriate occasion for exercising supplemental jurisdiction under 28 U.S.C. § 1367, despite the dismissal of the RTC. Later, the court also stated that 12 U.S.C. § 1441a(1) gave the court arising-under jurisdiction of the entire case, so that exercise of supplemental jurisdiction was not even necessary. KPERS's argument goes only to the propriety of supplemental jurisdiction, not to the district court's alternative theory. However, under 12 U.S.C. § 1441a(l)(1) once the RTC becomes a party to the case, the entire action is "deemed to arise under the laws of the United States" and is within the original jurisdiction of the district court. Therefore, the federal court has arising-under, rather than supplemental jurisdiction even over the claims that do not involve the RTC. Spring Garden Assocs. v. RTC, 26 F.3d 412, 417 (3d Cir.1994).
 
 
 14
 At any rate, KPERS cannot prevail even if we limit our analysis to supplemental jurisdiction. In United Mine Workers v. Gibbs, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966), and Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988), the Supreme Court distinguished between the power to exercise jurisdiction over pendent (or supplemental) claims and the advisability of exercising such jurisdiction. Under the familiar test, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " Cohill, 484 U.S. at 349, 108 S.Ct. at 618 (quoting Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138). The existence of this jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated. Bank One Texas Nat'l Ass'n v. Morrison, 26 F.3d 544, 547 (5th Cir.1994); see KPERS I, 4 F.3d at 622.
 
 
 15
 On the other hand, the decision of whether to exercise supplemental jurisdiction after dismissal of the federal claim is discretionary. Cohill, 484 U.S. at 349, 108 S.Ct. at 618 ("Gibbs drew a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power.") It is the district court's decision to retain jurisdiction, not the existence of jurisdiction in the first place, which KPERS contends was improper. In fact, we decided the first question, the existence of jurisdiction, in KPERS I, 4 F.3d at 622. Even if the district court abused its discretion in retaining the case, the court would not be without jurisdiction. In Condor Corp. v. City of St. Paul, 912 F.2d 215 (8th Cir.1990), we held that "it would have been more appropriate for the federal district court, once rejecting the federal claims, to have exercised its discretion and not passed on the pendent claim." Id. at 220. However, the district court had in fact retained and decided the pendent claim. Despite our conclusion that the district court should not have decided the pendent claim, on appeal we proceeded to review the state claim on the merits. Id. at 220-21. We could not have done so if the district court had lacked subject-matter jurisdiction.[3] Therefore, we need not review the propriety of the district court's decision to retain supplemental jurisdiction in order to decide this appeal.
 
 II.
 
 16
 The most troublesome question in this appeal is whether the Anti-Injunction Act, 28 U.S.C. § 2283, forbids the district court's order. KPERS treats this issue only in a footnote on the last page of its brief. Though the Home Savings defendants urge us to consider this point waived, KPERS does cite cases interpreting the Anti-Injunction Act, and we cannot intelligibly discuss those cases without considering the Act itself.
 
 The Anti-Injunction Act provides:
 
 17
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 18
 The Anti-Injunction Act prohibits federal courts from enjoining proceedings in state courts unless the injunction falls within one of three exceptions. Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286-87, 90 S.Ct. 1739, 1742-43, 26 L.Ed.2d 234 (1970). Courts must construe the exceptions to the Anti-Injunction Act narrowly and resolve doubts in favor of letting the state action proceed. Id. at 297, 90 S.Ct. at 1748; Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (plurality).
 
 
 19
 The district court's orders in the Shook, Hardy and Blackwell, Sanders cases did not enjoin any case currently pending in the Kansas courts, since the cases filed in August 1995 were removed and no new case has been filed. The Anti-Injunction Act does not apply if there is no state litigation in progress when the federal court issues its injunction. National City Lines v. LLC Corp., 687 F.2d 1122, 1127 (8th Cir.1982).
 
 
 20
 On the other hand, the Peat, Marwick case was not removed. It involves only state-law claims and Peat, Marwick did not implead the RTC. Thus, the Peat, Marwick injunction falls within the Anti-Injunction Act, unless one of the exceptions fits.
 
 
 21
 The district court held that all three exceptions to the Anti-Injunction Act applied to the Peat, Marwick case. However, Peat, Marwick limits its argument to the first exception--it contends that the injunction was authorized by an act of Congress.[4]
 
 
 22
 The statute governing removal procedures, 28 U.S.C. § 1446 (1994), provides that after the defendant has given notice of removal and filed the notice with the state court, the state court "shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). This language has been considered express authorization to stay state court proceedings; therefore, injunctions to stay state proceedings in removed cases come within the first exception to the Anti-Injunction Act. See Mitchum v. Foster, 407 U.S. 225, 234 & n. 12, 92 S.Ct. 2151, 2157-58 & n. 12, 32 L.Ed.2d 705 (1972); Lektro-Vend. Corp., 433 U.S. at 640, 97 S.Ct. at 2892.
 
 
 23
 Although the removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction. In Frith v. Blazon-Flexible Flyer, Inc., 512 F.2d 899 (5th Cir.1975) (per curiam), the Fifth Circuit stated that a district court could enjoin a state court case filed after removal if the second case was "an attempt to subvert the purposes of the removal statute." Id. at 901. Lou v. Belzberg, 834 F.2d 730 (9th Cir.1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988), recognizes the rule enunciated in Frith, stating, "It would be of little value to enjoin continuance of a state case after removal and then permit the refiling of essentially the same suit in state court." Id. at 741. Lou then somewhat clouds its statement by seemingly requiring a fraudulent filing in an attempt to subvert the removal but later states the rule in the disjunctive. Id. at 741.
 
 
 24
 In diversity cases, the federal court's jurisdiction can be subverted by fraudulent joinder of resident defendants to defeat diversity. Frith was a diversity case in which, after removal, the plaintiff filed a second suit in state court on the same claim, but joined a resident defendant, so that the defendants could not remove. The defendants removed anyway, relying on the doctrine of fraudulent joinder. The plaintiff moved to remand the second case, and the district court hearing that case granted the remand, specifically finding that the case did not fit within the doctrine of fraudulent joinder. 512 F.2d at 900. The defendants next obtained an injunction in the first, properly removed case prohibiting the plaintiff from proceeding in the state action. The Fifth Circuit reversed the injunction, saying that the second court's finding that there was no fraudulent joinder was an implicit finding that "the second suit was not brought in an attempt to subvert the purposes of the removal statute and was not aimed at defeating federal jurisdiction." Id. at 901. See also Myers v. Hertz Penske Truck Leasing, 572 F.Supp. 500 (N.D.Ga.1983).
 
 
 25
 The fraudulent joinder of non-diverse defendants is not relevant in cases based on federal question, rather than diversity, jurisdiction.[5] However, the same principle articulated in Frith applies in federal question cases: after removal the plaintiff cannot file essentially the same case in a second state action to subvert federal jurisdiction. In Lou the plaintiff first combined state and federal claims in a state court suit alleging derivative claims on behalf of a corporation and claims on behalf of a class consisting of the corporation's shareholders. After the defendants removed the first case, a second plaintiff, who was represented by the same attorneys and was also a shareholder, filed a second suit in state court in which she "asserted additional state law claims and omitted the federal claims." 834 F.2d at 733. The federal district court in the removed case enjoined the state court suit. The Ninth Circuit recognized that a federal court must have the ability to enjoin state proceedings that are filed to subvert the purposes of the relevant federal removal statute. See 834 F.2d at 741. However, on the facts before it, the Ninth Circuit reversed the injunction on the ground that it was barred by the Anti-Injunction Act. The district court had not found that the second suit was "fraudulent or an attempt to subvert the purposes of the removal statute." Id. at 741. The second suit involved "different plaintiffs, additional counsel, additional defendants, and only state claims." Id. at 741. Therefore, there was no basis for concluding that the new suit was merely a refiling of the old suit in "an attempt to subvert the purposes of the removal statute," 834 F.2d at 741, and the district court erred in enjoining it. Accord Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union, 515 F.Supp. 456, 460 (S.D.N.Y.1981) (denying injunction of second suit because "[t]his is not a case where the plaintiff in the removed action has flouted the federal court's removal jurisdiction by filing substantially the same complaint in state court subsequent to the removal.")
 
 
 26
 In this case, the district court specifically found that KPERS's newly filed state suit against Peat, Marwick was an attempt to subvert the removal of the earlier case. The court further found that the new suit was substantially identical to the old and that KPERS had merely tried to "carve up what was one case into separate cases with separate claims, all leading to a subversion of the RTC's right to remove the entire case." The record fully supports these findings as KPERS made clear not only in a brief filed with the district court, but also in a statement to the press, that the purpose of filing the second action was to obtain a favorable decision in the Kansas courts on the statute of limitations issue decided by this court, which KPERS believed to be erroneous. The district court's findings are not clearly erroneous.
 
 
 27
 The wording and purpose of the RTC removal statute, 12 U.S.C. § 1441a(l ), require that a federal forum be available for the entirety of any case to which the RTC is a party. Section 1441a(l )(1) bases federal jurisdiction on the existence of the RTC as a party: "Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding." We held in KPERS I that the purpose of section 1441a(l ) included more than just providing a federal forum for claims asserted directly against the RTC. KPERS I, 4 F.3d at 620 & n. 5. We held that the state court's attempt to sever the third-party claims against the RTC from the rest of the case could not insulate the principal claims from removal because the RTC continued to have an interest in the outcome of the principal claims. Id.
 
 
 28
 Further, in Spring Garden Associates v. RTC, 26 F.3d 412 (3d Cir.1994), the Third Circuit held that the language of section 1441a(l )(1) granting jurisdiction over "any civil action, suit, or proceeding" to which the RTC is a party confers jurisdiction over "the entirety of any case to which the RTC is a party and not just those claims in such a case brought by or against the RTC." 26 F.3d at 415-16. The Third Circuit specifically held that claims against the RTC's co-defendants were not pendent claims. Id. at 417. See generally In re Meyerland Co., 960 F.2d 512, 515 (5th Cir.1992) ("The power conferred by FIRREA to invoke federal jurisdiction and to remove from state court is substantial. Access to federal courts in all actions to which it is a party allows the FDIC to develop and rely on a national and uniform body of law, consistent with eliminating the problems identified by Congress in having less rigorous state standards coexisting with federal ones." (citations omitted)), cert. denied, 506 U.S. 1049, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993).
 
 
 29
 We conclude that the purpose of the RTC removal statute, 12 U.S.C. § 1441a(l ), is to provide a federal forum for the entirety of any case to which the RTC is a party at the time of removal. To permit KPERS to circumvent this goal by prosecuting a competing suit in state court would therefore subvert the purpose of the RTC removal statute. Accordingly, we hold that the district court's injunction of KPERS's state suit against Peat, Marwick was "expressly authorized" by Congress and is permissible under the Anti-Injunction Act.[6]
 
 III.
 A.
 
 30
 KPERS argues that under Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the district court should have remanded this case to Kansas state court because any action by the district court could disrupt Kansas's complex statutory scheme surrounding KPERS. While Burford is concerned with protecting complex state regulatory schemes from interference by federal courts, Burford, 319 U.S. at 334, 63 S.Ct. at 1107-08; New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 360-62, 109 S.Ct. 2506, 2514-15, 105 L.Ed.2d 298 (1989), there is no such threat in this case. KPERS has sued several defendants to recover money it lost in a bad investment. This case only requires the conduct of the defendants be measured against the duties imposed by tort and securities law. Consequently, the district court will not intrude on any complex state regulatory scheme protected by Burford. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 815-16, 96 S.Ct. 1236, 1245-46, 47 L.Ed.2d 483 (1976) (holding Burford abstention inappropriate where state-law claims before the federal court will not affect state efforts to implement a uniform policy on a matter of substantial public concern). Cf. Ankenbrandt v. Richards, 504 U.S. 689, 705-06, 112 S.Ct. 2206, 2215-16, 119 L.Ed.2d 468 (1992) (Burford abstention for domestic issues inappropriate where the domestic law question has no bearing on state-law tort claims before the federal court).
 
 B.
 
 31
 KPERS also argues that the Supreme Court's decision in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires the district court to abstain and remand this case to Kansas state court, or failing that, to at least abstain from enjoining KPERS's newly filed state court suit. Abstention under Younger, however, is inappropriate where a federal court has exclusive jurisdiction over a claim. See International Ass'n of Entrepreneurs of America v. Angoff, 58 F.3d 1266, 1271 (8th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996); Levy v. Lewis, 635 F.2d 960, 967 (2d Cir.1980). Under 12 U.S.C. § 1441a, the district court has exclusive jurisdiction over the entire case involving the RTC once the RTC has removed the case to the district court. Thus, Younger abstention is inappropriate in this case.
 
 
 32
 We affirm the order of the district court.
 
 
 
 [1]
 The Honorable Brook D. Bartlett, Chief Judge, United States District Court for the Western District of Missouri
 
 
 [2]
 KPERS also threatened to sue Boatmen's First National Bank, the trustee on the indentures. Boatmen's sued in federal court for declaratory relief and obtained a preliminary injunction prohibiting KPERS from suing Boatmen's elsewhere. We reversed that injunction because it was not based on adequate findings of fact and conclusions of law. Boatmen's First Nat'l Bank v. KPERS, 57 F.3d 638 (8th Cir.1995)
 
 
 [3]
 We are aware of statements in LaShawn A. v. Barry, 69 F.3d 556, 562-63 (D.C.Cir.1995), vacated, 74 F.3d 303 (1996), and Maguire v. Marquette Univ., 814 F.2d 1213, 1218 n. 4 (7th Cir.1987), that the question of whether to retain a case after dismissing federal claims is jurisdictional. We consider these statements to conflict with the Supreme Court's language in Cohill and Gibbs and to be inconsistent with our action in Condor Corp
 
 
 [4]
 The other two exceptions are known as the "in rem" exception, Lektro-Vend Corp., 433 U.S. at 641, 97 S.Ct. at 2892-93; In re Federal Skywalk Cases, 680 F.2d 1175, 1183 (8th Cir.), cert. denied, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982), and the "relitigation" exception, NBA v. Minnesota Pro. Basketball, Ltd. Partnership, 56 F.3d 866, 871 (8th Cir.1995). The "relitigation" exception may be applicable, but would only support a narrowed injunction, not the blanket prohibition against further litigation that the district court entered in this case. See id. at 871-72
 
 
 [5]
 KPERS contends that under Frith and Lou a federal court can only enjoin a second suit in cases of fraudulent joinder. This is an unduly narrow reading; we read those cases to mean that fraudulent joinder is one way in which a plaintiff can improperly attempt to subvert removal jurisdiction. That it is not the only way is demonstrated by the discussion of subversion of jurisdiction in Lou v. Belzberg, a federal question case
 
 
 [6]
 KPERS argues that the All Writs Act, 28 U.S.C. § 1651(a), does not authorize the district court to enjoin KPERS from prosecuting its newly filed state court suit. Because we hold that 12 U.S.C. § 1441a(1) authorizes the district court's injunction, we do not address this argument